We will hear argument next in No. 23-2364, Combs v. Collins. Good morning, and may it please the Court. The R.O. incorrectly applied the law in August 2000 when it didn't rate Mr. Combs' GERD symptoms by analogy under 4.20. Then, when reviewing his Q claim, the Veterans Court applied the wrong legal standard. It applied the met or approximated standard, and that's from 4.7. But 4.20 applies here, and that standard is closely analogous. So the Veterans Court used that wrong legal standard to find no error in the August 2000 rating decision, and then it stopped there. So no one, not the Board and not the Veterans Court, has made a factual finding as to whether the outcome would have been manifestly different if the right standard were to be applied in the first instance. This is in Morgan. Yes, Judge. If I remember right, tell me if I'm misremembering. At least in your reply brief to the Veterans Court, you positively asked for application of an approximation standard. I asked for both at the Veterans Court. But I didn't see any argument that was saying analogy is different from approximation, approximation isn't enough, you have to do analogy, here's why that's different. I think on this, in invoking the analogy provision, you expressly talked about the approximation. I expressly talked about the two separate concepts. Anytime I use the term approximate, I then follow it up with or by analogy. For example, at the opening brief, it's appendix pages 188 through 191, I stated, he explained that melanoma is analogous to his diarrhea, both contemplate blood in the stool, and then I made another analogy at the appendix at page 189, and then I clarified again at the reply brief at appendix 201. Borrow had a duty to rate either verbatim, which would be meta-approximated, that's the met part of meta-approximated, or by analogy and maximize benefits. So the or by analogy, that's apply 4.20. In the instances where he doesn't actually meet the higher, the more difficult standard, were he being rated directly. And then, and then, after making the analogy, maximize benefits. So, your honors, there's been no factual finding here as to whether, had the right standard been applied, the outcome would have been manifestly different, which is very important in this Kew case, because we're, of course, not asking this court to review any facts, but no facts have been found because the error, the legal standard applied to what the RO did in August 2000, that was analyzed under the wrong legal standard, the 4.7 met or approximated legal standard, when Mr. Combs was supposed to be held to the 4.20 legal standard by analogy, symptom by symptom. So, since no one has determined whether that error took place by applying the correct legal standard in the first place, no one has made the subsequent Kew analysis of whether that error would have been outcome determinative. So, the court should vacate and remand for that result. It should instruct the Veterans Court to instruct the board to apply the right standard and then make the crucial fact finding whether applying 4.20 manifestly changes the outcome of the August 2000 rating decision. I'm a little puzzled. Can you show me in your blue brief where you're arguing that 4.7 was improperly applied? Sure, Judge. I didn't argue that 4.7... Well, that's the argument you just got up here and made, that the RO improperly applied 4.7 rather than 4.20. Sure. And I thought the gist of this case was 4.20 applies. The government agrees that 4.20 applies. The Veterans Court found no CUE in the board's determination that the rating by analogy under 4.20 was not clearly erroneous here. Okay, I think I understand your question now, Judge. So, at the Veterans Court, we were arguing two alternate things, and we're only arguing one now. At the Veterans Court, I mentioned and argued that Mr. Combs meets, I use the term verbatim, several of these symptoms listed in D.C. 70 through 46. Right, and the Veterans Court said there's no clear error and that that's not right. Sure. And you're not challenging that because that's application of law to factor fact. Yes, Judge. So, what's your argument? I also said at the Veterans Court, or by analogy, and then I made the analogies, and the analogies have never taken place. That's the analysis that has to happen. The legal standard under 4.20, closely analogous, that has never been applied to Mr. Combs' symptoms when he was rated under D.C. 73-46. And then the Veterans Court looked at it and said it doesn't approximate this catch-all provision. Isn't that what an analogy would be? No, meta-approximate is not the same as an analogy. I don't understand your argument here at all because, obviously, if we're going by analogy, we're not looking directly at the same symptoms. Because if it was the same symptoms, it would probably be the same condition and you wouldn't have an analogy.  So, it can't be that they have to do that. It just has to approximate the overall picture of that. No, Judge. Well, I mean, you can disagree with that, but what else would there be? Well, that's why in the- What is it to rate by analogy if it's not to look at the severity encompassed in the particular percentage criteria and see whether the condition by analogy approximates that overall disability picture? There's a difference in kind between approximation and analogy. Well, what's your legal standard then? What is your legal articulation of what the rating by analogy would require the RO and the Board to do that they didn't do here? The words in 4.20, the words in the regulation, closely analogous. It's a completely different regulation, 4.7, that uses the word approximate. And 4.7 speaks to- I don't care because you didn't make this 4.7 argument in your brief. I don't even see a citation to 4.7. At the Veterans Court? At the blue brief. And if you haven't made it to me, I'm not going to listen to it. I don't care if you made it to the Veterans Court. The fireplace or swimming pool's analogy, Your Honor, that I- No. Okay. So, tell me if 4.2 requires rating by analogy, what does that mean as a matter of law? 4.20 requires rating by analogy, symptom by symptom, as a matter of law. We know that from Webb. However, you know, we're not arguing this is a Webb violation. We're arguing this is a plain language of 4.20. When the RO and then in turn the Board and the Veterans Court required Mr. Webb to meet the identical symptoms rated. For example, the weight loss, weight gain issue. Is weight loss approximate to weight gain? No. They are two opposite things. Is negative 10 pounds approximately plus 100 pounds? No, Your Honor. They're not. Because- And they're not analogous either. No, they are analogous, Your Honor. We made that argument in the brief. If that's your position, then it's standardless. The standard is located in 4.20, closely analogous. Both- How is weight loss closely analogous to weight gain? As we mentioned in our briefs at this court, both contemplate changes in the weight due to the underlying condition that Mr. Combs is suffering from and then being rated for by analogy to hiatal hernia. Can you point to me in the Veterans Court's decision where you think it has legal error? When it agreed with the Board that Mr. Combs did not meet or approximate, that's the legal standard that it used. The legal standard should have been, was not closely analogous. Do you have a particular language you're focused on? In the memorandum decision? That would be page 4 of the memorandum decision. The Board concluded that cue having been demonstrated because Mr. Combs did not undubatedly establish the criteria for hiatal hernia use in 7.46 were met or approximated. Now, the standard, if the Veterans Court had said, or actually, honestly, if the Board, the original fact finder had said, these analogies don't exist, your analogies fail, then we wouldn't be here at this court. But the analogy was never made. Okay. All right. Thank you. Thank you. Your Honors, may it please the Court, this Court should affirm the Veterans Court decision. Before you get to responding, can you just, I'm a little worried that the Veterans Court is going to go down this path of overusing George. Does the government agree? I mean, this does not seem like it's a George situation. This is the regulation and whatever the Veterans Court or the Linderman or whatever case has been the law forever. The fact that we did something in Webb that reemphasized that doesn't mean that Webb is new law, that they don't have to follow, right? Yes, Your Honor, exactly. Because that would mean every time we interpreted a preexisting regulation that hadn't been specifically interpreted in that way before, that it would be a George issue, and that just can't be the case. Well, I think there's two things going on there. I think it can be a thing that's not applied backward without being new law. But that's not, we don't have that issue here. If the Veterans Court's decision solely rests on that basis here, it would probably be legal error. Okay. Well, I don't know. I mean, I want the government to understand that if we start seeing the Veterans Court making this George argument, it's going to lose these cases. Because George was very specific where there had been a preexisting interpretation that was the law at the time, and then this court changed that interpretation, and the Supreme Court said, well, that can't be Q. But there was no preexisting interpretation in Webb that this court changed. We just found that the articulation there was wrong. But it wasn't the regulation itself that changed. Yes, Your Honor. I mean, the court in Webb just applied landing men. And I think it's important to go. Okay. That's fine. I get that. Can you make sense of the argument that there's a difference between approximation and analogous? Yes, Your Honor. Stepping back, I think the issue is that the opposing counsel is trying, or Mr. Combs is trying, to say that 4.20 is the way by which you analyze the condition. And it's not. It's 4.7. And there Mr. Combs is looking at 4.7 and saying, you can't apply met or approximate under 4.7. You have to do analogous under 4.20, which is lending men. But 4.20, Your Honors, only goes to selecting the diagnostic code. And there is no dispute here over what the diagnostic code is. The diagnostic code is 7346. It's hiatal hernia. And that was applied analogously through 4.20 to Mr. Combs. However, once you get that, that you are in hiatal hernia, code 7436, you are now doing the analysis under 4.7, 38 CFR 4.7, which is the higher of two evaluations. So I think there was confusion. And there's the board, I mean, in the original rating decision, they found he was entitled to 10% by analogy. In order to show that he's entitled to a higher percentage, he has to show that his condition matches one of those higher levels. I'm intentionally using the word approximate, but I think that's the way you do it, right? Yes, Your Honor. And originally, what this originally, he wanted to, back in August 2000, this was to 30%. And then in the Q claim, it became 60%. And if you go back and look at his arguments, at Mr. Combs' arguments, at the regional office level, and then you go look at his arguments at the board level as well, they sort of track along. He's talking about his symptoms. He's saying, I met these criteria. And that's sort of a 4.7 argument. Sort of at the veterans court, and then especially up in this court, if you squint at the veterans court brief, you can see a discussion of sort of approximate what opposing counsel was just speaking to. But then at this court, in the reply, it sort of comes to the full bloom of the argument that they are making is that 4.20 is the standard. That's just not correct, Your Honor. 4.20 is the standard, and I'm repeating myself now, but just to make it plain. It tells you, if you don't have a listed condition, how it gets done. What criteria you look to, and you will turn it out, guess what. Exactly, Your Honor. But why would the analogy directive of 4.20 stop once you've landed on the right code, as opposed to the right section of the code, namely the different rating criteria? Well, if you look at 4.20, Your Honor, and we can compare it to 4.7. So we have an unlisted condition, so it doesn't have its own code. It's permissible to rate under a closely related disease or injury under certain conditions, right? So why do you not, for that purpose, the closely related analogy, why do you treat the entirety of what's in 7346 as a unit that can't be divided up, as opposed to, and there are, what, three levels within that unit, and you ask the same analogy question. Are you in level 60, 30, 10? Well, the government's position, Your Honor, is that 4.20, with the language, it will be permissible to rate under, goes to choosing which diagnostic code. Once you're within the diagnostic code, then you're at 4.7. And 4.7 talks about where there's a question as to which of two evaluations shall be applied. The higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. Now, that's the standard that's used, and that's the standard that's referred to, I believe, by the Board and the Court of Veterans, or, sorry, the Veterans Court. And that's the standard that you use when the rating actually specifically applies, not by analogy? Yes, Your Honor. And I think the reason this sort of gets confused is if you look at the Veterans Court decision, this goes to what Judge Hughes was saying, if you looked at the Veterans Court decision and their discussion of Webb, they sort of say, they sort of discuss 4.20 and 4.7, but then if you look at it, there's not really an answer as to how it would be different or how this 4.20 would apply. And I think that goes to what Judge Hughes was asking opposing counsel is, how would you actually do this? And the Veterans Court goes so far as to say there is no explanation in Webb of how you would do this. And I think that goes to Judge Hughes. I mean, Webb's point, I think, is if we're looking at the 60 percent under the analogy, we can't say he doesn't meet it because he doesn't have all the symptoms. Because that's, you don't, wouldn't have all the symptoms necessarily by analogy, but you could look and say it doesn't approximate the constellation of symptoms or the more general category of symptom combinations productive of severe impairment of health. Yes, Your Honor. Do you have any kind of general understanding? You may not. I would think that when we're talking about analogy, we're almost always going to be looking at the more general, you know, things. Like the 30 percent is considerable impairment of health, and the 60 percent is severe impairment of health. And so if it's not this specific as symptoms, then it's going to be the more general picture to have a more specific rating. Yes, Your Honor. But I think that comes from 4.7. I think it comes from the more nearly approximates language as opposed to the analogous language in 4.20. And I think that's the way it's done in practice. And Your Honor touched on something here, and I'll just flow into that real quickly to touch on it, which is there's been an argument made at various times about how the government required them to meet exactly the standard of DC 7436. And that has not been the case at any level of this. The RO analyzed it and basically, you know, did an approximation. They weren't going line by line saying you have to have this, you have to have this, you have to have this. And that was done at every level. So there is no factual basis. In fact, the way the identical language came is that at the Veterans Court, Mr. Combs stated that his conditions basically met everything verbatim. And then the Veterans Court, in their opinion, said, no, you do not meet things verbatim. It was never the government holding them to a verbatim standard. So I wanted to allay that confusion. It seems like Your Honors have a good grasp of this. I will not belabor the points anymore. If there are no further questions, the government respectfully requests that this court affirm the Veterans Court decision. Thank you. Thank you. There is one important thing, Your Honors, that I'd like to clarify here. That is that when I discuss met or approximated in opposition to closely analogous, I'm referring to two separate regulations. I'm not referring to a thesaurus or something like that. Now, when 4.20 discusses closely analogous, it says, when an unlisted condition is encountered, it will be permissible to rate under a closely related disease. Not just select a diagnostic code under a closely related disease, but rate under it. After selecting it, rate under it. The performance of rating means going symptom by symptom. And how do we do that? Under 4.20, we do that through the closely analogous standard, through the anatomical localization, functions affected, and symptomology. This somehow feels like the kind of question, which regulation applies at which stage, getting to the right code and then within the right code. Is there a practice reflected in board or Veterans Court decisions? Yes, Judge. I cited two board decisions around August 2000 in my briefing at this court where it did that. It made the analogies to the symptoms themselves at the level of the symptom listing, the percentage levels that are listed in the diagnostic code. To answer your first more general question. Even if the analogies to the symptoms are there, they still have to approximate the overall higher level rating. Yes, Your Honor. And if the board determines that they don't approximate the higher overall rating, which I think the board did here and said it wasn't a severe impairment of health, then what's wrong with that? What's wrong with that is that it didn't first make the analogy. Now, if the board had made the analogy. Let me ask you this. Do you really think the VA intended for disabilities that are directly controlled by a rating schedule to be rated differently in terms of severity than ratings by analogy? Because that's the thrust of your argument. No, no, Judge. Well, 4.7 is what tells you how to rate severity. Yes. For Veterans who are being rated by analogy, first 4.20 applies. And then, yes, 4.7 applies also. Once we have made the analogies, let's say all the analogies are made for a Veteran and he might fit somewhere between a 30% and a 60%. 4.27 says the higher two ratings, whatever one he meets or closely approximates, he's supposed to get the higher one. But 4.20, for Veterans being rated by analogy, like Mr. Combs, rate under a closely related disease. Rate under it. Don't just select the code. Rate under it. 4.20 has to happen first. The analogy has to happen first. And then 4.7 applies the higher of two ratings. Or here they found that you don't meet the criteria for the 60%. And you didn't even argue for the 30%. No, we didn't. Because when we went symptom by symptom, he looked a lot more like the 60% rating. Well, I mean, that makes no sense to me either. Because how could you possibly have the higher rating and not have the intermediate rating? Because DC7346 has a set of symptoms it lists at 60% that it doesn't list at all at 30%. Sure, but it also has the severe impairment versus moderate impairment. It does, and we're not arguing that. If those symptoms equate severe impairment, then they clearly include the moderate impairment. Well, they don't equate them. It's an alternative. The Secretary even states that as an alternative in the brief. Or other symptom combinations productive of severe impairment of health. And we're not arguing about that because it reads a whole lot like that was a finding. We're not asking this Court to review. That's an or, though. That's an alternate route to a 60% rating or at least a 30% rating. But that's not the route we're arguing about at this Court. Do you know if you have a claim for new material evidence or anything like that on this condition? Knowing Mr. Combs' claims history, he probably could. I think so. But you don't presently. Oh, no. No, I don't represent Mr. Combs at the agency, but I'm not aware of one. I can say that. That's the best I can say that, Your Honor. Thank you, Your Honor. Thank you. Thanks to both counsel. Case is submitted.